322-0329 the people of the state of Illinois's aptly first Tommy L. Crockwell appellant. All right, thank you. Ms. Garber, are you ready to begin your argument? I am. Thank you. For the record, I'll just note my name is attorney Sarah Garber and I represent the decision to abandon an alibi defense in this case in the middle of trial in pursuit of a legal defense that counsel thought was an outright path to victory, which was the theory of corpus delecti, which, as it turns out, was a frivolous legal argument under the facts of this case, fell below an objective standard of reasonableness and denied Mr. Crockwell a fair trial. After this issue was raised on direct appeal, this court expressed that more information was needed pursuant to the post-conviction process to determine whether there were other reasons that counsel chose to abandon the alibi defense in this case. The court speculated that perhaps the witnesses chose not to testify or were not cooperative or that counsel had lost faith in the veracity of their statements. After the post-conviction process in this case, wherein which we obtained numerous affidavits and presented testimony via an evidentiary hearing, it has become clear that none of those types of reasons were true. Trial counsel stated very clearly in his affidavit that the reason he failed to call these witnesses and put on an alibi defense was in pursuit of a legal argument based on the theory of corpus delecti, which he believed under the facts and the law applied to the case and meant that the state could not prove this case beyond a reasonable doubt. He stated that he trusted the alibi witnesses' accounts, that there was nothing that changed that caused him to lose faith in the veracity or the credibility of the alibi witnesses, and that they were ready and willing to testify at trial. The alibi witnesses were disclosed in the answer, they were subpoenaed to come to trial, they were in person present at trial, and they were also in person present at the evidentiary hearing and submitted sworn affidavits in support of their testimony. We know now that trial counsel, and I believe it is undisputed, that he was completely incorrect about the legal defense of corpus delecti, that it does not apply to the facts of this case, that it was not a viable defense. And it is now made clear through the post-conviction process that this was the reason that counsel abandoned an alibi defense, abandoned calling his client to testify, an explanation of the confession that he made, that he abandoned this based on a pure legal theory that he believed was viable, that he advised his client to do so based on his understanding, and that his client followed his direction and followed his explanation of the defense and used that as a basis for his decision not to testify and to put on a defense. And in this case, what I think is important is that the record also shows that this was a viable alibi defense that counsel could have put on. Certainly, counsel felt it was a viable alibi defense after reviewing the entire file, considering legal strategy, having many years of experience under his belt, he made a decision that under the facts and circumstances of the case, that the way to put on a defense was to have the defendant explain the reason why he gave this statement, confession to an acquaintance of his, implicating himself in this crime, and to put on the alibi, that he was not actually the person who committed this shooting, that he had an alibi as to where he was. Counsel made that decision, he felt it was a valid alibi defense, he disclosed it in opening statement, and he mentioned it many times on the record throughout trial. But the record shows beyond his judgment that this was a viable alibi defense. The two alibi witnesses encompass the entire period of time where the state contended the murder could have taken place. The time of the murder was unclear based on the state's case, but the alibi encompassed the entire period of time. Additionally, the witnesses were not impeached. This was not a case where it was the alibi witnesses versus the state's witnesses. The state had no witness and still has no witness that puts Mr. Crockwell as the person who committed this shooting, or who could testify that these alibi witnesses or the defendant were anywhere other than they said they were in their affidavits, which is together and not involved in the shooting. So these are unimpeached witnesses. The state has no witnesses to indicate that they are lying or misrepresenting where they were, and no witnesses to the contrary. Additionally, this is a case where Mr. Crockwell did not match the original description of the shooter. There was no genuine motive established by the state. There was no forensics, no other evidence other than the confession that he was involved in this case, which of course means that the alibi defense was potentially viable because it was not up against a mountain of other evidence. Yes, it is hard generally to overcome a recorded confession, but when that is the only evidence and there is an explanation, which in this case was that Mr. Crockwell was trying, however ill-advised, to deflect blame away from his son, and that itself, that reason was also supported by the record. The confidential informant who the state called to testify, Mr. Davis, testified that he asked Mr. Crockwell many times about his son when he was trying to get him to talk about this murder, and that he asked him that in order to get him talking. He also confirmed that there were rumors in the community that Mr. Crockwell's son was involved in the shooting. So, the idea that Mr. Crockwell was trying to deflect blame away from his son was also something that could have been believed by a jury and that was supported by the record. So, this was, under the original strategy, a winnable case, but it required explanation and it required the alibi witnesses to testify. Certainly, with this viable alibi defense, it was unreasonable to forgo the defense and choose not to put it on in pursuit of a completely inapplicable legal theory, the doctrine of corpus delecti. And the state's other explanations for trial counsel's decision for why he chose not to put on this defense do not hold water. The state relies on a few statements that counsel made during his testimony at the evidentiary hearing as to the strength of the case, as reasons why he didn't put on this defense. But to be clear, counsel did not put these on as reasons why he didn't put on the defense. He said very clearly in his affidavit that the reason he didn't put on the defense was because he believed in that corpus delecti was a viable defense that required the finding of not guilty. However, trial counsel did testify at the evidentiary hearing that he felt that the alibi witnesses were imperfect. He said specifically that this was not a case where he had a client who had plane tickets, that they were in the state of Florida at the time of the crime, and that's certainly true. However, that is not his reason for abandoning alibi defense. He did not say that, and I don't think it would have been imaginable that he would have. That's certainly not the standard for what is required for an alibi. In fact, to put on a defense at all, a scintilla of evidence is what is required to put on a jury instruction or a defense. And there certainly was two alibi witnesses that were ready and willing to testify and still are today, that they were with Mr. Crockwell, and he had full faith in the credibility of those witnesses. He talked about- Ms. Barber, can I ask you please to address the issue of trial counsel's decision to not move for the directed finding until his closing argument, the combination of that, rather than just make his motion for directed and argue it at that time, rather than just hold on to it until closing? What impact that might have had by way of prejudice? I mean, sure. Obviously, trial counsel made a decision to forego that, and I think forewent an opportunity to determine whether the court had understood the viability of the alibi defense. Certainly, if he would have done that, he would have gotten an indication from the court that this was not a valid alibi defense earlier on. However, at that point, the case was closed and he had chosen not to put on a defense, so he certainly could have made a viable argument, perhaps, but it would not have been supported well by the record because the confession was left completely unrebutted. And so he could have perhaps made a reasonable doubt argument at that point. But when there's an unrebutted confession, that is an almost impossible case to overcome, which was not truly reflective of the facts. You know, the counsel talked about the discrepancies in the times that various witnesses said they were with my client that night and that that had shifted over time. And the state talked about this. However, it is undisputed that those time periods were fully encompassed by the alibi. And it has been years since this happened. And it's totally human and reasonable that a witness would not exactly remember precisely whether it was nine o'clock or 915 or 930 when they did something. And that just further, you know, exemplifies why counsel's decision was ineffective because he had called these witnesses promptly at the time they would have had a fresher memory. And additionally, weaknesses in the case only underscores the need for an alibi even more, which leads me to my next point, which is the suggestion that there was a jailhouse snitch that would have been called. If that were true, which is not well, very well supported by the record. But if it was true, that's again, more reason why counsel should put on a defense in this case. counsel's discussion that this was a tough case does not mean don't put on a defense, it means put on a defense even more, it means put on the imperfect alibi even more, because you don't have a reasonable doubt argument if the state's case is tough. And here there was a note that that other witness was known to counsel all along, nothing changed in the presentation of the case that led counsel to think, okay, now I have to change because of this jailhouse snitch. The jailhouse snitch was mentioned in opening statement and was known to counsel when he made his decision to pursue an alibi defense in this case. Miss Garber? Yes. I have a question. This imperfect defense. Have you ever ever seen or heard of a perfect alibi defense when it actually went to trial and just get dismissed before you get to a trial if it was an actual perfect alibi defense? I've never seen such a thing in 30 years of doing this. I have not been doing it quite that long, Judge. But I also have not seen that. Of course, every trial is just that it's a trial where witnesses get on the stand and they have imperfect human testimony and a jury has to decide and that's exactly what Mr. Krakow was denied of in this case was the opportunity for the jury to hear from those two witnesses and to hear the explanation for why he did this. And that most certainly in our view would have changed the outcome of this case and would have at least given him a fair trial. Let me ask you another question then if I may. Strickland, can you address the second prong issues with regard to Strickland? Yes. So we believe that the error was absolutely prejudicial. You know, this was not an overwhelming case for the state. This was a case where they had a confession. However, there was an explanation. That explanation was supported by the record. Mr. Krakow's son was a early potential suspect. He matched the description. He had himself been shot that night. So this lends support to the fact that this confession was not unable to be overcome. And this idea that the state has presented that the details that Mr. Krakow gave were something that only the killer could have known is entirely belied by the record. It was testified by the state's witness that these details were spread across the community. That not only the details of the shooting, that it was a shooting, that there was blood splatter, that there was headphones in the ears, and also that Mr. Krakow's son was, you know, considered in the community to be a potential suspect. These things were all well known. And those are the details that Mr. Krakow included in his very ill-advised statement to Mr. Davis. And so, you know, this is not a case, like I said additionally, where there was witnesses that put him there and we would have to overcome that. It was not that type of case. There was no other evidence against Mr. Krakow other than this statement. And he had two alibi witnesses that were and continue to be unimpeached witnesses. And although their testimony may not be to the minute where they can say they looked at their watch, they said that they were with him that night. And the two of them put it for the entire time. So it is unquestionable that not putting on this in a first-degree murder case, leaving the confession completely unrebutted, pursuing a defense that is utterly unsupported by the facts, and counsel's admission that his reason was for that defense, it absolutely prejudiced Mr. Krakow. And it deprived him of a fair trial. The jury never got to hear the full picture of this case, that there was an explanation and an alibi. And we cannot be confident in counsel's decision to pursue an inapplicable legal theory or in the outcome of the trier of fact, who did not get to hear it. And in fact, the judge mentioned on the record, counsel, I thought there was going to be something about an alibi. The judge recalled that information and understood that something changed. And the judge very well could have thought that as this court thought that that was because there was a problem with the alibi witnesses, but we now know that there wasn't. And that also was deeply prejudicial, which added to the court's analysis of what was going on unquestionably. When you put forth as an officer of the court that this is what's going to happen, and then you change tune, the court understands that something serious has happened and that those witnesses are no longer credible or viable or able to testify. And that was not what took place. So I would ask this court to reverse this case and remand it so that Mr. Krakow can have a new trial where all the evidence is presented, and a jury or judge can make a fair and accurate decision. Thank you. All right. Thank you, Ms. Garber and Mr. Atwood. Are you ready for your argument? Yes. Good afternoon, Your Honors. Counsel, may it please the court. My name is Nicholas Atwood. I represent the people of the state of Illinois in this case. I will choose to focus primarily on the first issue, but I would like to reserve a couple of minutes at the end of my argument to address the second issue. The primary issue in this case is whether trial counsel's decision to switch from a jury trial to a bench trial was reasonable based on two points, not simply one. As counsel noted, his affidavit stated that he was choosing to rely on the corpus delicti argument. But as we found out in his testimony at the hearing, his affidavit wasn't really worth the paper that it was written on. He testified that he had two reasons for doing this. Number one was the ill-advised corpus delicti argument that we know doesn't hold water. And number two, he was relying on the fact that the people did not meet their burden in this case. So to determine what was going on in this counsel's head when this trial occurred, we have to go back to the beginning. As counsel noted, the opening statements of the people indicated that there was a jailhouse informant who was going to testify that the defendant had committed this crime and had told him that he had committed this crime. The defendant's theory of this case was essentially twofold. First of all, he was covering for his son, whom he found out from Anton Davis was a suspect in this crime. We go back and listen to that video. Davis brings up this issue first. He informs the defendant that people are saying that Crockwell Jr. is a suspect, and it's after that point that the defendant begins to make these statements regarding the various facts of the murder, and some of which were public, some of which we'll talk about later were not public. But defendant's theory of this case was this. First of all, we have to deal with this over here where he's admitting to these facts. So there were a couple of different ways he could do that. Number one, he could rely on the burden of proof. Number two, he could present what everyone is referring to as imperfect alibi witnesses. But I would actually agree somewhat with Justice Peterson. There are no imperfect alibi witnesses. There are either there were no alibis. The two potential witnesses were Leroy Wright and defendant's partner, Ms. Corrie. Both of them were going to testify that defendant arrived home at various times between 9 and 10 30, none of which completely removed him from the scene of the crime, and both of which had they testified were the only independent evidence outside of defendant's statement that he was ever present at the scene of the crime during the period of time in which crime occurred. So clearly, there is a strategic decision to be made here. If counsel is going to rely on the fact that the state does not present Johnson was the witness, Joseph Johnson was their witness who would testify that defendant told him after he had been arrested that he had committed the crime, he doesn't have to put on these other witnesses that place him at the scene. So defendant is promising in the beginning, I'm going to tell you I've got these alibi witnesses because he's anticipating that this evidence is going to come out in the state's case in chief. He testified that when it didn't, it sort of surprised him. The state informed him that they only had one witness left and it was going to be the doctor who performed the autopsy. It was at this point after he already had to make this promise of a potential alibi that he decided to rethink what would be the best strategy going forward. So he's presented with do I put these alibi witnesses on whose testimony is impeachable, who place him on the scene, who are inconsistent with their time. After all, Roy Wright told police during the investigation that it was 1015 when the defendant was home. And then he testified in the hearing that would be between nine and 10. His affidavit said 930 to 1030. Moreover, attorney Adam testified that Wright could not account for all of defendants movements that night. He was in and out of the house. There were people coming and going. He wasn't an alibi. He was only a possible alibi and essentially what be a worst case scenario when Adam would be having to deal with this testimony from the jailhouse informant. The jailhouse informant's testimony was critical because it blew a hole if he were to testify, would blow a hole in their entire theory that he was simply covering for his son because there'd be no reason for him to say he did it after he'd been arrested. It would negate having to create an alibi for his son under these circumstances. So it destroys the entire case if that testimony comes out. And once they didn't present that in the case in chief, the only way that testimony would come in is when the people present that witness in rebuttal. They'd have the last word before closing arguments and it would be a deal breaker. On the other hand, Adam had to consider, do I stick with my other theory here, which is he was simply covering for his son. This was puffery that he was engaged in with Anton Davis. And there are other facts which would support that conclusion. Specifically, the defendant didn't match the description of any of the people that were seen in the area. His son did match the description of one of the people that was seen in the area, though it wasn't an eyewitness to a shooting. It was just an individual who happened to see the person there. The upward trajectory of the bullet would indicate that a shorter man had fired the gun. Crockwell Jr. is shorter than the defendant by a considerable amount based on the record. Crockwell Jr. suffered a bullet wound to his hand on the very night of the shooting, which a defendant indicated was due to unloading the weapon improperly. It could be inferred then that that would have been the same murder weapon that was used. Mr. Atwood, I understand your position is that this was strategy on behalf of counsel, but can you tell me and address the issue of how it can be strategy for the counsel to have reserved argument on his motion for hybrid when he made the argument? He was considering his closing argument to be the primary argument dealing with both the corpus delicti and the burden of proof. I think perhaps he just assessed that the standard is so high on those directed findings for him to be able to prove that we're not going to take this to finish the case. I think he probably decided it would be best to reserve that argument and make it during the closing argument. I also think that when the people rested, he had not yet made up his mind what he was going to do. He had to talk to defendant and assess whether defendant wanted to testify and how they were going to proceed. So I can't speak with certainty because I don't recall him being asked that during his testimony. So it's simply conjecture. But I think the main point of this would be that he believed that it was a matter of reasonable trial strategy to just rely on. They didn't meet their burden of because he thought he had reasonable doubt based on the defendant's son possibly being present, the hand injury, you know, the fact that there was no independent evidence that all that tied this defendant to the scene. It was simply his own statement. And so even if this court were to find that this wasn't a reasonable trial strategy, the defendant still had to show that he was prejudiced and he can't do it in this case. If we're going to look at whether he was prejudiced by counsel's not to put these witnesses on, we have to imagine a scenario in which he does put these witnesses on. As I stated earlier, these witnesses are going to testify. The state is going to poke holes in their time frame. For example, Ms. Corey, her testimony is without any value at all. She wasn't even relying on affirmative information. She was basing her entire statement on the fact that this was their routine around the time of the crime. She wasn't saying that she was certainly with him. She said it was their habit that he would come home at a certain time and he would prepare a meal for her and something else. So that's very little weight is going to be attributed to that. What burden do you place on the second prong of Strickland? What do you believe is that burden for prejudice, proving prejudice? That the results would have been different had they done it. Different? Yeah, it has to be a different result than what was occurred for him to be different. And with regard to prejudice, one of the things I want to bring up, counsels talked about the eyewitnesses specifically with this headphones. These headphones are the deal breaker in this case. Melvin Appleby did not testify that he saw headphones. Defense counsel repeatedly brought this issue up and said, oh, well, he must have seen them. They were there at the time of the crime. But it was actually Officer Jaco who testified to the presence of the headphones. If we recall, defendant said that the victim was wearing headphones in this conversation with Appleby. That was not publicly available information. Officer Jaco testified on page 685 that he located the headphones when he was using a flashlight to look for them. And in actuality, they weren't over the head headphones. They were described as earbuds, the kind that just go into your ear. It was 1030 at night when this happened. Appleby is not a trained investigator. He simply observed the victim's body lying there. Those headphones were not known to the public. Yes, the fact that the victim or that Tommy Crockwell Jr. was a suspect, that was known, that there was blood on the ground, all that stuff can be safely assumed. But the fact that the defendant knew those headphones were there puts him at the scene of the crime when no one else knew that. It is a complete mischaracterization of the record to say that everyone knew those headphones were there because they didn't. Only an investigating officer testified to the presence of those headphones. And we have to base this court's on the record that is available to us. We can't speculate. We can't retry the case and assume that maybe Appleby saw them because he never testified to it. Moreover, another important factor to consider is that the defendant had a motive. He had told Anton Davis that the victim had attempted to rob his brother of some drugs. There was no other indication that there was any other motive or that this was just a random crime. So we have a motive that's in play and we have information that wasn't known to the public that was in play. So even if you go back and recreate this, the rebuttal witnesses are going to poke holes in the defendant's statement. They're going to say he told us after the fact he did it. His own witnesses cannot account for him during the entire time period in which the crime occurred. And he knows knowledge that other people didn't. So even if we found that it was an unreasonable strategy, if we retry this case, he's going to be found guilty again because defendant can never fix those flaws with his argument. And that's that evidence is what would seal the deal for this case. A couple of cases I wanted to mention the defendant cited in their reply brief. One of them was People v. Chandler and this dealt with putting on like an appropriate defense. In Chandler, this case isn't like that. There was no cross-examination in Chandler. There was no theory of innocence and there was no witnesses presented. We had extensive cross-examination that challenged the state's theories of this case. We had a theory of innocence and that he was covering for his son. And moreover, that was a felony murder case. And it is clear from that case that the defense attorney thought he could argue that because the defendant had not actually committed the crime himself, the act of the murder, that he couldn't be convicted when it was clear that felony murder was on the table and the jurors would have had to ignore their instructions in order to find him inside. Likewise, with People v. Rainey, that was a case where the defendant, a psychologist report found the defendant was mentally ill for purposes of the death penalty. And counsel stated that he never attempted to use the guilty but mentally ill theory or an insanity theory because he thought it meant that he would have to admit to the crime when Illinois Supreme Court precedent at the time indicated that you could assert your innocence and also argue these alternative theories. That's not what happened in this case. The Corpus Delicti argument, although meritless, wasn't the only argument that was being made. It's well established that you could rely on the burden of proof and have that be reasonable trial strategy. And that's what happened here. As far as the second issue regarding the overhear, a couple of things I want to mention. In the reply brief, counsel does not address the people citations to People v. White and People v. Reno. And those are the cases that apply. There is no requirement that a witness would have to say at some future specified date, I'll be able to have a specific conversation with a person for an overhear. It's a common sense standard that's used by the trial court when they're assessing that. And in this case, the court found that there would be a reason to believe that this conversation would happen because Davis had had a very personal conversation with the defendant where he had admitted that he killed someone. And Davis came to the authorities and said, look, he didn't try to get leniency in his testimony. He said, I'm disturbed by this. I want to let the authorities know this happened. And I believe that I can get him to bring it up again. That's totally different than the Bachman case the defendant cites. In Bachman, there's no evidence presented at all that there was a reasonable cause for believing that the co-defendant would be able to get the other co-defendant to talk about the robbery that had occurred. It was an after the fact sort of statement. And there was nothing, there was no prior conversation as there was in this case, as there was in White. In People v. White, the defendant's brother knew information that could have only have been known by people who were involved. He agreed to speak with authorities about the murder that had been occurred, that had occurred. He didn't expect any leniency for that testimony. And he only said that he would be able to have a conversation, which he was able to do. It's a very low standard as far as engaging in this. And this motion was litigated five times in the trial court. So a counsel can't be ineffective for failing to raise what is an indisputably meritless motion. And defendant hasn't cited any case law that supports his assertion that this wasn't enough. The case law that the state cites is directly on point. And I would ask you to consider that persuasive when you make your decision. Your honors have any further questions? I do not. So with that, I would ask this court to affirm the trial court's order denying defendant relief. Thank you. Thank you. All right. Ms. Scarborough, you have five minutes for rebuttal if you wish. Oh, you're muted. Thank you. Thank you, counsels. I just want to be really clear about this jailhouse snitch. There is not a single person or a single page of the record that suggests that this person was going to testify that Mr. Crockwell confessed to the crime. The statement was that he was going to buy a gun. It was not a second confession. It was certainly potentially harmful information, but it was not anywhere near what counsel suggests that an additional confession was going to come out. That is just absolutely not supported by the record. And the suggestion that this jailhouse witness would have revealed for the first time that my client was in the area or these alibi witnesses revealed that he was in the area of the crime, that is also belied by the record. The cat was out of the bag. The whole point of the case was that Mr. Crockwell had confessed to not only being in the area of the crime, but actually committing the murder. So it was already in evidence that he was supposedly in the area of the crime. And at that point, putting on an explanation and alibi witnesses was the only option. And there is not this suggestion that counsel was hoping to avoid that kind of information coming out. That is just not a reasonable strategy. To Justice Davenport's point about this directed verdict, this also exemplifies that counsel was not seeking to weigh certain pieces of evidence coming in or what the state's strategy was, that he had made a decision that he was going to pursue corpus delecti. He believed it was a viable defense, and he waited until the end to make that and only that argument. Counsel made a lot of good points about things that counsel could have raised about reasonable doubt, but he didn't raise those points. He made a corpus delecti argument, and he didn't change courses to pursue a reasonable doubt defense. He changed courses to pursue corpus delecti. Even if he had given the presence of an alibi, that would have still been unreasonable, but it certainly been more reasonable than changing courses to rely on an entirely not viable defense. Ms. Garber, I mean, corpus delecti is in essence a lack of, you can't reach your burden of proof beyond reasonable doubt. It's just a theory. It's a theory of a certain set of facts under which courts have found you can't get there. I totally agree. It's a beyond reasonable doubt. It's the argument you would make at a motion for a directed finding, and then you get to know what the judge thinks. Absolutely. I guess what I'm saying is it is a reasonable doubt theory, but counsel was not putting forth a different reasonable doubt theory, which would have been potentially viable under the law, which was, as counsel said, that the bullet wound couldn't come from a taller person. He didn't match the description. All of these things could have been the focus of the defense, but they weren't. The focus was corpus delecti that the state could not prove because they had no additional facts beyond the confession. Yes, I completely agree about that. I will just say that as criminal defense attorneys, we have a really tough job. We hold the constitutional rights of the defendants in our hands, and we have tough choices to make all the time. I know that. Trial counsel knows that, and we all care deeply about trying to do the best we can for our clients, but we make mistakes, and this was not a tough choice to make. There was an alibi defense here. There was an explanation for the confession. Counsel knew that. That's why he began his trial that way, and he simply made a mistake when he thought midway through trial that this technicality under the law applied to the facts of the case. It did not, and he based his decision around it, and in doing so, he cost Mr. Crockwell a fair trial. This is the exact reason we have the doctrine of ineffective assistance and the exact reason we have appellate judges like your honors so that when mistakes are made, they can be corrected, and so that the system that we all hold dear where people are entitled to a fair trial and effective counsel can be realized. It's understandable why we put so much stock in counsel's strategy, but we cannot do it in this case where the result would be illogical and absurd. Trial counsel knew that this was the way to go, and he made a mistake, and that absolutely cost Mr. Crockwell a fair trial, and just to follow up that the standard as again, Justice Davenport was asking about under Strickland is that there's a reasonable probability that if not for the errors, the outcome would have been different. I think in this case, it is unquestionably the facts have established that, and I would ask that you give Mr. Crockwell a new trial. Thank you. All right. Thank both of you for your arguments. We will take this matter under advisement and issue a decision in due course.